*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

## UNITED STATES
Appellee

**v.**

## Lamar A. FORBES, Aviation Maintenance Administrationman Second Class
United States Navy, Appellant

### No. 18-0304
Crim. App. No. 201600357

Argued December 4, 2018—Decided February 7, 2019

Military Judge: Heather Partridge

For Appellant: *Robert Feldmeier,* Esq. (argued); *Lieutenant Commander William L. Geraty*, JAGC, USN (on brief).

For Appellee: *Lieutenant George R. Lewis*, JAGC, USN (argued); *Colonel Mark K. Jamison*, USMC, *Captain Brian L. Farrell*, USMC, and *Brian K. Keller*, Esq. (on brief); *Colonel Valerie C. Danyluk*, USMC.

Amicus Curiae for Appellant: *Peter E. Perkowski*, Esq. (on brief) — Outserve–SLDN, Inc.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, OHLSON, and MAGGS, joined.

_____

Judge SPARKS delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of one specification of making a false official statement, three specifications of sexual assault by bodily harm, and one specification of infected sexual battery,[1] in violation of Articles 107, 120, and 134, UCMJ, 10 U.S.C. §§ 907, 920, 934 (2012).[2] The military judge sentenced Appellant to

---

[1] Appellant was convicted of infected sexual battery pursuant to an assimilated Virginia law.

[2] Pursuant to Appellant's pretrial agreement, the military judge dismissed four specifications of assault consummated by a

reduction to E-1, eight years of confinement, and a dishonorable discharge. The convening authority approved the sentence as adjudged. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and the sentence. *United States v. Forbes*, 77 M.J. 765 (N-M. Ct. Crim. App. 2018). We granted review to determine whether Appellant's pleas to sexual assault by bodily harm through failing to inform his sexual partners he was HIV positive were provident.

## Background

> In February 2012, the appellant tested positive for [human immunodeficiency virus (HIV)] and was counseled several times by medical providers to refrain from engaging in sexual activity without first advising any prospective sexual partner that he carried HIV. From July 2013 to June 2015, however, the appellant engaged in unprotected sexual intercourse with four different women without telling any of the women that he was HIV-positive. Each of the women consented to intercourse with the appellant, but did so without knowledge of his positive HIV status.

*Forbes*, 77 M.J. at 768. Appellant subsequently entered into a pretrial agreement which required a stipulation of fact and Appellant's agreement to enter unconditional guilty pleas to three allegations of sexual assault by bodily harm.

## Discussion

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). "During a guilty plea inquiry the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008) (citation omitted). Thus, "[t]he test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea."

---

battery, Article 128, UCMJ, 10 U.S.C. § 928, and one specification of sexual assault, Article 120, UCMJ, 10 U.S.C. § 920.

*United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted).

Appellant now argues his pleas were improvident because his HIV-positive status did not cause any of the victims to engage in sexual intercourse with him.[3] He argues both the text of the statute and the elements of the offense require that the alleged offensive touching cause the sex act. He interprets this to mean that, in order for his pleas to be provident, he would have to "explain how touching any victim with the HIV virus could cause that victim to engage in a sexual act." This assertion misstates the law. Rather, it is the failure to inform the victims of the HIV-positive status that vitiates meaningful consent and causes the touching to be offensive. As such, for the reasons that follow, Appellant's guilty pleas were provident.

In pleading guilty to each specification of sexual assault by bodily harm, Appellant agreed he (i) "committed a sexual act upon another person by causing penetration, however slight, of the vulva or anus or mouth by the penis; and (ii) That [he] did so by causing bodily harm to that other person." *Manual for Courts-Martial, United States* pt. IV, para. 45.b.(3)(b) (2016 ed.) (*MCM*). "Bodily harm" is defined as "any offensive touching of another, however slight, including any nonconsensual sexual act or nonconsensual sexual contact." *MCM* pt. IV, para. 45.a.(g)(3). "Consent" is defined as "a freely given agreement to the conduct at issue by a competent person." *MCM* pt. IV, para. 45.a.(g)(8)(A). To be freely given, consent must be informed. *See United States v. Gutierrez*, 74 M.J. 61, 68 (C.A.A.F. 2015) (explaining in the context of offensive touching that "[w]ithout disclosure of HIV status there cannot be a true consent." (quoting *R. v. Cuerrier*, [1998] 2 S.C.R. 371, 372 (Can.))); *see, e.g., United States v. Bygrave*, 46 M.J. 491, 493 (C.A.A.F. 1997) (noting that "lack of consent is an element of the offense" of rape and discussing informed consent as an individual's decision to have sex with her partner after he informed her he was HIV positive).

---

[3] Although the Government argues appellate review is waived because Appellant pled guilty, a guilty plea does not waive review of whether a plea was provident. *See, e.g., Moon*, 73 M.J. at 386–89 (reviewing whether a guilty plea was provident).

With these definitions in mind, we have long held first that failure to disclose one's HIV-positive status before engaging in sexual activity constitutes an offensive touching, *United States v. Joseph*, 37 M.J. 392, 395 (C.M.A. 1993), *overruled in part by Gutierrez*, 74 M.J. 61, including offensive touching constituting bodily harm for assault offenses, *United States v. Upham*, 66 M.J. 83, 87 (C.A.A.F. 2008), and second that "informed consent can convert what might otherwise be an offensive touching into a non-offensive touching." *Joseph*, 37 M.J. at 396 n.5 (internal quotation marks omitted).

Thus, consistent with Article 120(b)(1)(B), UCMJ, Appellant committed a sexual assault each time he had sexual intercourse with one of the victims without first informing her of his HIV status and thereby lawfully obtaining her consent to the intercourse.[4]

The *MCM*'s statement of the elements of sexual assault by bodily harm, quoted above, is consistent with the conduct charged in each specification: "In that [Appellant], on active duty, did [at location and on specified dates], commit a sexual act upon [the victim] to wit: penetration of her vulva with his penis, by causing bodily harm to her, to wit: engaging in such act without previously informing her that he carries [HIV]."

It is also consistent with what Appellant admitted in the stipulation of fact: "After I tested positive for HIV, I engaged in sex with multiple women without disclosing my HIV status. None of these women … were … aware of my HIV-positive status."

---

[4] Both Appellant and Amicus Curiae Outserve–SLDN argue Appellant's failure to inform his victims of his HIV-positive status could not have constituted bodily harm under Article 120(b)(1)(B), UCMJ. More specifically, Appellant argues his failure to disclose his HIV-positive status did not negate consent because it was merely "fraud in the inducement," and not "fraud in the factum." These arguments, however, are foreclosed by our precedent, which states that true consent must be informed. *Gutierrez*, 74 M.J. at 68 ("[w]ithout disclosure of HIV status there cannot be a true consent") (citation omitted).

Finally, the *MCM*'s statement of the law is also consistent with Appellant's pleas, as evidenced by what he and the military judge discussed during the plea colloquy. The military judge began her inquiry by explaining what a guilty plea entails and what rights are forfeited in pleading guilty. She repeatedly asked whether Appellant understood what she was explaining, and he repeatedly replied, "Yes, ma'am." Next, the military judge defined the stipulation of fact as a formal agreement between Appellant and the Government containing facts each party agreed were true. Appellant told the military judge he understood what the stipulation was when he signed it and agreed he did so freely and voluntarily.

Next, the military judge listed Article 120(b)(1)(B)'s elements and explained that, in the context of Appellant's case, bodily harm meant "penetrating [each victim's] vulva with [his] penis without previously informing her that [he] carr[ies] HIV." She explained that the "government has alleged that [Appellant] committed certain sexual acts with [the victims]—specifically, penetrating their vulvas with [Appellant's] penis—and that the same physical acts also constitute the bodily harm required for the charged sexual assaults." She explained that, should the case proceed to trial, the Government would also have the burden to prove the victims did not consent to the charged sexual intercourse.

The military judge then defined several terms for Appellant. She defined "sexual act" as "the penetration, however slight, of the vulva with the penis." She defined "vulva" and "labia" for Appellant. She defined "bodily harm" as "any offensive touch of another, however, slight, including any nonconsensual sexual act or nonconsensual sexual contact." She defined "consent" as "a freely given agreement to the conduct at issue by a competent person," considering all the surrounding circumstances. She even explained " 'HIV positive' means that you carry the Human Immunodeficiency Virus."

The military judge also discussed relevant case law with Appellant, including our holding in *Gutierrez*, which she described as our "recogni[tion] that a person who is unaware of the HIV status of her sexual partner cannot provide

meaningful, informed consent to engage in a sex act with that person."

Appellant agreed he understood each element and definition and agreed that they accurately described the conduct as charged.

Finally, in his own words, Appellant told the military judge he had sex with the victims. He explained this conduct was wrongful because he failed to inform his victims of his HIV-positive status. And he told the military judge he and his defense counsel had discussed "meaningful consent" and that his victims could not have consented because they "did not know prior to intercourse about [his] HIV status."

The military judge conducted a more than adequate plea inquiry—clarifying concepts, defining terms, summarizing the law, and repeatedly pausing to ensure Appellant's understanding. Appellant pled guilty, admitting he failed to inform his victims of his HIV-positive status, thereby depriving them of the ability to provide meaningful, informed consent to sexual intercourse. The military judge determined there was an adequate basis in law and fact to accept his pleas. We conclude the military judge did not abuse her discretion in accepting them.

**Judgment**

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.